# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2004-DR-00913-SCT

*JAN MICHAEL BRAWNER, JR.*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 04/12/2002 |
| TRIAL JUDGE: | HON. ANDREW C. BAKER |
| COURT FROM WHICH APPEALED: | TATE COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | MISSISSIPPI OFFICE OF CAPITAL POST-CONVICTION COUNSEL |
| | BY: WILLIAM S. CLAYTON |
| | ROBERT M. RYAN |
| | LOUWLYNN VANZETTA WILLIAMS |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: MELANIE K. DOTSON |
| DISTRICT ATTORNEY: | JOHN W. CHAMPION |
| NATURE OF THE CASE: | CIVIL - DEATH PENALTY - POST CONVICTION |
| DISPOSITION: | PETITION FOR POST-CONVICTION RELIEF DENIED - 10/26/2006 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**COBB, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     This petition for post-conviction relief arises from a quadruple homicide in 2001 in Tate County.   Jan Michael Brawner was convicted on April 11, 2002, of four counts of capital murder, and subsequent to a sentencing hearing, was sentenced to death.   Brawner  appealed to this Court, and we affirmed his conviction in ***Brawner v. State***, 872 So. 2d 1 (Miss. 2004).

On May 18, 2005, Brawner filed his petition for post-conviction relief pursuant to Miss. Code Ann. Sections 99-39-1 to -29 raising the following eight assignment of errors: three alleging ineffective assistance of counsel for failing to: (1) request a change of venue, (2) prepare a full transcription of the trial, and (3) present mitigating evidence; (4) allowing the underlying felony to be used as a separate aggravating factor during sentencing; (5) unconstitutionality of the avoiding arrest aggravating factor; (6) unconstitutionality of the felonious abuse of a child aggravating factor; (7) failure to include the aggravating factors elevating the charge to capital murder in the indictment and (8) illegal sentence. Finding no merit to any of these arguments, we deny Brawner's petition.

## FACTS

¶2. The following facts were taken from this Court's opinion on direct appeal. In December 1997, Brawner married Barbara Craft, and in March 1998, their daughter, Paige, was born. Brawner and Barbara divorced in March 2001, she was awarded custody of Paige, and they lived with Barbara's parents, Carl and Jane Craft, at their home in Tate County. Brawner also lived with the Crafts off and on during his marriage to Barbara.

¶3. At the time of the murders, Brawner was living with his girlfriend June Fillyaw, in an apartment in Southaven. According to Brawner, they were having financial difficulties, and on top of that, he had also been told by Barbara that she did not want him around Paige. He testified that pressure on him was building because nothing was going right.

¶4. On the day before the murders, Brawner left his apartment in Southaven at 3:00 a.m. and headed toward the Crafts' house, about an hour away. He testified that he thought he might be

2

able to borrow money from Carl, although in a prior statement he said he had planned to rob Carl. While waiting on the Craft's front steps from approximately 4:00 a.m. until 7:00 a.m., he took a 7-mm Ruger rifle out of Carl's truck and emptied the bullets from it, because "he didn't want to get shot." A dog started barking, and Brawner hid until Carl went back inside, then ran away, thinking Carl might be getting a gun. He then drove back to his apartment.

¶5. Around noon the following day, April 25, 2001, Brawner again drove to the Crafts' house, and knocked on the door, but no one was home. He then put on rubber gloves that he had purchased earlier that day, "took the slats out of the back door," entered the house, and took a .22 rifle. He then went to Carl's workplace and asked him if it would be OK to go out to the house to wait for Barbara and Paige so that he could see his daughter, to which Carl agreed.

¶6. Since Barbara and Paige did not return, Brawner decided to leave, and as he was doing so, Barbara, Paige, and Jane pulled into the drive. After a brief conversation with Jane and Barbara, Brawner became agitated and went to the truck and brought back the rifle that he had taken from the Crafts' house earlier that day. Just as he told Barbara that she was not going to take Paige away from him, he saw Jane walking toward the bedroom and shot her with the rifle. He said he then shot Barbara as she was coming toward him, and went to where Jane had fallen and "put her out of her misery." After this, he shot Barbara again and took Paige, who had witnessed the murders, to her bedroom and told her to watch TV. After Brawner determined that Paige would be able to identify him, and in his words, he "was just bent on killing," he went back into the bedroom and shot his daughter twice, killing her. He then waited in the house

3

until Carl came home from work, and when Carl walked through the door, Brawner shot and killed him.

¶7.     Brawner stole approximately $300 from Carl's wallet, Jane's wedding ring, and food stamps out of Barbara's purse. He took Windex from the kitchen and attempted to wipe away any fingerprints he may have left. Brawner then returned to his apartment in Southaven, where he gave the stolen wedding ring to Fillyaw, asked her to marry him, and told her that he bought the ring at a pawn shop.

¶8.     Brawner was suspected of the murders and detained by the police. While he was being held at the Tate County jail, Brawner admitted to the shootings in a statement made to the Chief Deputy of the Tate County Sheriff's Department. Brawner also testified on his own behalf at trial and gave essentially the same account of the events as described above.

¶9.     Brawner raised the insanity defense at trial, although he testified that he knew at the time of the shootings that his actions were wrong. The trial judge found Brawner competent based on information furnished by the Mississippi State Hospital, which certified Brawner competent to stand trial, and mentally responsible for the acts at the time they were committed. Additionally, a court-appointed psychiatrist, chosen by defense counsel, reported that Brawner was neither insane nor incompetent to stand trial.

¶10.    Brawner was represented by the same counsel at trial and on direct appeal. However, now on post-conviction relief he is represented by new counsel from the Mississippi Office of Capital Post-Conviction Counsel.

4

**DISCUSSION**

## I. INEFFECTIVE ASSISTANCE OF COUNSEL

¶11. Brawner argues three reasons why counsel was ineffective: (1) failing to request a change of venue; (2) failure to have the entire record transcribed and (3) failure to put on mitigating evidence during the sentencing phase. This Court has held that an accused is not entitled to errorless counsel rather competent counsel. *Stringer v. State*, 454 So. 2d 468, 476 (Miss. 1984). The legal test as to effective assistance of counsel was established in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), where the United States Supreme Court held that on a claim of ineffective assistance of counsel the benchmark is whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result. *Leatherwood v. State*, 473 So. 2d 964, 968 (Miss. 1985). However, this Court recognizes that there is a strong presumption that counsel's conduct was within the wide range of reasonable professional conduct. *Id*. at 969. Further, that counsel's actions were the result of strategic decisions. *Id*. (citing *Murray v. Maggio*, 736 F.2d 279, 292 (5th Cir. 1984)).

¶12. The burden of proving ineffective assistance of counsel rests on the defendant to show that counsel's performance was (1) deficient and that (2) the deficient performance prejudiced the defense. *Id*. at 968. If the defendant fails to prove either component than reversal of his conviction or sentence is not warranted. *Cole v. State*, 666 So. 2d 767, 775 (Miss. 1995) (citing *Edwards v. State*, 615 So. 2d 590, 596 (Miss. 1993)). In making this determination

5

we view counsel's performance from the totality of the circumstances at the time counsel acted and not through the lens of hindsight. *Cole*, 666 So. 2d at 775 (citing *Frierson v. State*, 606 So. 2d 604, 608 (Miss. 1992)).

¶13.    In order to prove that counsel acted deficiently, the defendant must show specific acts or omissions that he alleges are the result of unreasonable legal assistance. *Leatherwood*, 473 So. 2d at 968.    The defendant must prove counsel's performance was deficient using the reasonably effective standard of performance.    *Id*.    This means that counsel made errors that were so serious that they were not functioning as the counsel guaranteed the defendant by the Sixth Amendment. *Williams v. Taylor*, 529 U.S. 362, 390, 120 S. Ct. 1495, 1511, 146 L. Ed. 2d 389 (2000).

¶14.    Even if the defendant proves that counsel's performance fell below the standard required for a reasonably competent lawyer, he still must prove that he suffered prejudice on account of that deficient performance.    The defendant must show that but for counsel's deficient performance that there was a reasonable probability that the result of the proceedings would have been different. *Leatherwood*, 473 So. 2d at 968.    It is insufficient to only show that the errors had some conceivable effect on the outcome of the proceeding, because virtually every act or omission of counsel would meet that test. *Williams*, 529 U.S. at 393. A reasonable probability is one sufficient to undermine the confidence in the outcome. *Id.* at 391.

¶15. There are, however, three situations implicating the right to counsel that involve circumstances so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified. *Bell v. Cone*, 535 U.S. 685, 695, 122 S. Ct. 1843, 1850, 152 L. Ed. 2d 914 (2002). The first and most obvious is the complete denial of counsel even if only for a critical stage. *Id*. at 695. Second is when counsel entirely fails to subject the prosecution's case to meaningful adversarial testing. *Id*. at 696. This means that the attorney's failure to test the prosecution's case was complete. *Id*. at 696-97. Finally, where counsel is called upon to render assistance under circumstances where competent counsel very likely could not. *Id.* at 696. Here none of these exceptions are present.

### Failure to Request a Change of Venue

¶16. Brawner argues that due to pretrial publicity counsel was deficient in failing to request a change of venue, pointing to articles appearing in local newspapers and news broadcasts from Memphis television stations detailing the known facts of the crime. The reports revealed the location of the crime, the names of the victims and eventually the name of the man arrested and charged with the crime. Brawner argues that because of the nature of the quadruple homicide and the size of the community in which it occurred that the media coverage denied him his right to a fair and impartial jury and that counsel failed in attempting to protect that right via a change of venue.

¶17. This Court has recognized that the right to a fair trial by an impartial jury is fundamental and essential to our form of government and that it is a right guaranteed by both the federal and

7

state constitutions. *Johnson v. State*, 476 So. 2d 1195, 1209 (Miss. 1985) (citing *Adams v. State*, 220 Miss. 812, 72 So. 2d 211 (1954)). An accused is entitled to fair, unprejudiced, unbiased individual jurors, who are willing to be guided by the testimony given by the witnesses and the law as announced by the Court. *Johnson* 476 So. 2d at 1210. If an unbiased jury is not impaneled, it does not matter how fair the remainder of the proceedings may be. *Fisher v. State*, 481 So. 2d 203, 216 (Miss. 1985). "It is one of the crowning glories of our law that no matter how guilty one may be, no matter how atrocious his crime, nor how certain his doom, when brought to trial anywhere he shall nevertheless, have the same fair and impartial trial accorded to the most innocent defendant." *Id*.

¶18.    This Court has held that defense counsel is under no duty to attempt to transfer venue; therefore, the decision not to seek a change of venue would fall within the realm of trial strategy. *Bishop v. State*, 882 So. 2d 135, 142 (Miss. 2004); *Faraga v. State*, 514 So. 2d 295, 307 (Miss. 1987). As we have stated:

> The fact that there has been widespread publicity in a county about a particular crime does not necessarily mean that a prudent defense counsel will want to have the case tried in another county. There must be a weighing of the odds. Most of the judges and trial lawyers of this state are aware of a statistical distinct disparity between counties in the willingness of juries to impose the death penalty. For some reason, also, some counties appear more "conviction prone" than others. We are also aware of defense lawyers who, in hindsight, have profoundly regretted a circuit judge sustaining their change of venue motion.

*Faraga*, 514 So. 2d at 307. Trial counsel's decision not to seek a change of venue is beyond our review. However, even assuming arguendo that trial counsel was deficient in failing to move for a change of venue Brawner has not proven that he suffered prejudice as a result. *See*

8

*Cabello v. State*, 524 So. 2d 313, 316 (Miss. 1988) (citing *Gilliard v. State*, 462 So. 2d 710, 714 (Miss. 1985)). Given the quantum of evidence presented against him, including his own confession, it is unlikely that a jury in any other county would have reached another verdict.

**Failure to Transcribe the Full Record**

¶19. Brawner's trial counsel ensured that a record was made of the entire trial proceedings, however for the purposes of appeal they only requested a transcription of portions of the trial record. Absent from the transcript presented to this Court on direct appeal was the word-for-word dialogue of voir dire, opening statements and closing arguments during the sentencing phase. However, at all times Brawner has been aware that there existed audio tapes and a shorthand record of these missing portions of the transcript. Further, the court reporter at trial provided Brawner with the audio tapes and informed him that she was willing and remains willing to transcribe her shorthand notes.

¶20. Brawner does not claim any specific error arising from the non-transcribed sections of the record, just that counsel was ineffective for failing to have the entire proceeding transcribe. Brawner asserts that there is no way for counsel on post-conviction relief to address all possible sources of error unless he has a full and complete transcript and therefore trial counsel was ineffective.

¶21. The United States Supreme Court has stated that trial counsel has a duty to ensure that there is a partial transcript of the trial proceedings in order for appellate counsel to properly perform his role as an advocate for the defendant. *Hardy v. United States*, 375 U.S. 277, 280, 84 S. Ct. 424, 427, 11 L. Ed. 2d 331 (1963). Trial counsel's duty cannot be discharged unless

9

he has a transcript of the testimony and evidence presented by the defendant and prosecution and also the court's charge to the jury. *Hardy*, 375 U.S. at 282. Had Brawner's trial counsel not ensured that a transcript was made of these portions of the trial then it would be possible that their performance would have been deficient, but that is clearly not the present case.

¶22. The Fifth Circuit in a similar situation stated that the petitioner must show that he was prejudiced by these omissions and absent support, mere conclusory allegations are insufficient to raise a constitutional issue. *Green v. Johnson,* 160 F.3d 1029, 1039 (5th Cir. 1998). Despite the fact that Brawner has been in possession of audio tapes of the full proceeding and the court reporter has been willing to transcribe the missing portions of the transcript, he has yet to demonstrate prejudice. Brawner has failed to demonstrate to this Court how the absence of these portions of the transcript has affected his rights.

### Failure to Present Mitigating Evidence

¶23. Trial counsel did not present mitigating evidence at sentencing, despite the fact that there were at least three witnesses willing to testify including: Brawner's mother, sister and psychiatrist. Each witness would have testified to Brawner's good character and certain negative events that occurred during his lifetime. However, it was Brawner's choice not to have these witnesses testify. During the guilt phase the prosecutor, defense counsel and the petitioner had an extensive conversation regarding the presentation of witnesses on Brawner's behalf. The relevant sections of the conversation went as follows:

> Mr. Walker [defense counsel]: Your Honor, I need to ask [Petitioner] one more thing, please sir. Mr. Brawner, do you wish for me to try to get you "life" or "life without parole," if you are, in fact, found guilty of any of these counts by

the jury? In other words, it's what the lawyers call "put on a mitigation case," call your mother as a witness to tell about your background, call Dr. Marsha Little-Hendren to tell what she found. How do you wish me to proceed, is what I need to know from you?

The Defendant: As far as life, I don't feel that I deserve life to live.

\* \* \*

Mr. Walker: And I told you- you know, you kind of put me in a quandary here, I'm being asked to do something that I haven't done in ten capital murder trials, but I will respect your [Petitioner's] opinion.

Mr Champion [prosecutor]: David, for the record, is it your recommendation that he put on mitigating evidence in guilt – in the sentencing phase if we get to that point?

Mr. Walker: Based upon 18 years as a criminal defense lawyer, based upon ten capital murder trials, the answer is "yes," but I qualify that by saying I will honor [Petitioner's] order and his instructions.

\* \* \*

Mr. Walker: Mr. Brawner, a capital murder trial in Mississippi has two parts or phases. One is where the jury finds the man or lady guilty or not guilty. Do you understand that now?

The Defendant: Yes, sir.

Mr Walker: And the other part is, if one is found guilty then the jury decides "life, life without parole, or death." One of those three options would be the sentence.

The Defendant: Yes, sir.

\* \* \*

Mr. Walker: . . . you do not wish to call your mother as a witness [at guilt] because she knows nothing about the facts that I could bring out and your desire is that she not testify before the jury and beg you to get life or life without parole.

The Defendant : That's right.

The State went on to question Brawner whether he understood that failure to present any mitigating evidence "in all likelihood" would end up in the jury returning a death sentence. To which Brawner answered "Yes, sir."

¶24. Brawner now argues that trial counsel's failure to present mitigating evidence was ineffective assistance of counsel. To this end Brawner cites *Blanco v. Singletary*, 943 F.2d

11

1477, 1501 (11th Cir. 1991). In ***Blanco*** the Eleventh Circuit held that it was ineffective assistance of counsel for an attorney to blindly follow the defendant's command not to pursue mitigating evidence. ***Id***. at 1502. The Eleventh Circuit stated that the lawyer must first investigate all possible avenues of mitigation and advise his client of those offering potential merit. ***Id***. Obviously that standard has been met here by trial counsel. However, that determination need not be reached by this Court. Our own law does not require trial counsel to go against the fully informed and voluntary wishes of his client to refrain from presenting mitigating evidence. ***Burns v. State***, 879 So. 2d 1000, 1006 (Miss. 2004). Counsel will not be deemed ineffective for following his client's wishes, so long as the client made an informed decision. ***Dowthitt v. Johnson***, 230 F.3d 733, 748 (5th Cir. 2000). A defendant may not block his lawyer's efforts and later claim the resulting performance was constitutionally deficient. ***Id***.

¶25. Brawner was fully apprised of the consequences of his choice. He made an informed and voluntary decision not to present mitigating evidence. Trial counsel prepared a mitigation case but did not present it based on Brawner's wishes, despite contrary recommendations. Trial counsel's recommendations and the prosecution's recommendation advised Brawner of the gravity of his choice. We cannot now find that trial counsel was ineffective for failing to put on mitigating evidence. To do otherwise, would allow Brawner to create ineffectiveness.

12

## II.   USE OF THE UNDERLYING FELONY AS AN AGGRAVATING FACTOR

¶26.   Brawner argues that use of the robbery aggravating factor during sentencing was inappropriate as it allowed the use of the underlying felony which elevated the crime to capital murder to elevate the sentence to death.   Brawner argues that for three reasons the use of this aggravating factor was inappropriate.   First, the underlying felony of robbery was used during the guilt phase, proven to the jury beyond a reasonable doubt, and therefore, its use at sentencing creates an "automatic" aggravating circumstance.   Second, use of the robbery aggravating factor violates the mandate issued by the United States Supreme Court in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000) and *Ring v. Arizona*, 536 U.S. 584, 122 S. Ct. 2428, 153 L. Ed. 2d 556 (2002).   Third, use of the underlying felony during sentencing exposes the defendant to double jeopardy.

¶27.   Prior to addressing the merits of this issue, we note that it is procedurally barred pursuant to Miss. Code Ann. Section 99-39-21 (1) because it could have been raised on direct appeal and was not.   *Wiley v. State*, 750 So. 2d 1193, 1208 (Miss. 1999).   Without waiving the procedural bar, we determine this issue is without merit.   Brawner concedes in his brief that this Court has refused to grant relief based on his first argument that use of the underlying felony at sentencing constitutes improper doubling.   However, he argues that this Court should follow a series of decisions from Florida which he alleges support his position. Specifically Brawner cites *Barnhill v. State*, 834 So. 2d 836 (Fla. 2002); *Griffin v. State*, 820 So. 2d 906 (Fla. 2002) and *Robertson v. State*, 611 So. 2d 1228 (Fla. 1993).

13

¶28. We have consistently upheld the use of the underlying felony as an aggravating factor during sentencing. *Goodin v. State*, 787 So. 2d 639, 654 (Miss. 2001) (citing *Walker v. State*, 671 So. 2d 581, 612 (Miss. 1995)). The argument is the familiar "stacking" argument. It contends that it is unconstitutional for the State to elevate murder to capital murder and then, using the same factor, elevate the sentence to death. As pointed out in *Lockett v. State*, 517 So. 2d 1317, 1337 (Miss. 1987), this Court has consistently rejected this argument. *Goodin*, 787 So. 2d at 654; *Davis v. State*, 684 So. 2d 643, 664 (Miss. 1996). However, this Court has found impermissible doubling where the trial court in a sentencing proceeding submits as separate aggravating factors both the fact that the capital murder was committed during the commission of a robbery and for pecuniary gain. *Goodin*, 787 So. 2d at 654. In that case the two aggravating factors essentially comprise one circumstance. *Id*. (citing *Willie v. State*, 585 So. 2d 660 (Miss. 1991)).

¶29. The Florida cases cited by Brawner do not stand for the proposition he asserts. Rather, they stand for the proposition that *the use of two aggravating factors which essentially comprise one circumstance results in impermissible doubling*. *Barnhill*, 834 So. 2d at 851; *Griffin*, 820 So. 2d at 914-15; *Robertson*, 611 So. 2d at 1233. This is identical to our law as announced in *Goodin* and *Willie*. Therefore, this assertion is without merit.

¶30. Brawner's second argument is that *Ring* and *Apprendi* require that the aggravating factor which the State intends to use at sentencing, as elements of the offense of capital murder, must be set forth in the indictment. This Court has repeatedly dealt with this argument

finding it without merit. *Jordan v. State*, 918 So. 2d 636, 661 (Miss. 2005). Simply put *Ring* and *Apperendi* have no applicability to Mississippi's capital murder sentencing scheme. *Id*. (citing *Berry v. State*, 882 So. 2d 157, 172 (Miss. 172)). The State is correct in its assertion that a defendant is not entitled to formal notice of the aggravating circumstances to be employed by the prosecution and that an indictment for capital murder puts a defendant on sufficient notice to what statutory aggravating factors will be used against him. *Stevens v. State*, 867 So. 2d 219, 227 (Miss. 2003); *Smith v. State*, 729 So. 2d 1191, 1224 (Miss. 1998).

¶31. The purpose of the indictment is to provide the accused reasonable notice of the charges against him so that he may prepare an adequate defense. *Brown v. State*, 890 So. 2d 901, 918 (Miss. 2004). Accordingly, all that is required in the indictment is a clear and concise statement of the elements of the crime charged. Our death penalty statute clearly states the only aggravating circumstances which may be relied upon by the prosecution in seeking the ultimate punishment. Thus, every time an individual is charged with capital murder they are put on notice that the death penalty may result. *Id*. (citing *Williams v. State*, 445 So. 2d 798, 804 (Miss. 1984)). Therefore, this argument is without merit.

¶32. Brawner's third argument is that use of the underlying felony at sentencing exposed him to double jeopardy. For this proposition Brawner points to no case law in support. This Court has held that failure to cite to relevant authority relieves us of the duty of reviewing the issue. *Glasper v. State*, 914 So. 2d 708, 726 (Miss. 2005). Without lifting the procedural bar this argument is also without merit. The United States Supreme Court in *Schiro v. Farley*, 510

15

U.S. 222, 230, 114 S. Ct. 783, 789, 127 L. Ed. 2d 47 (1994) addressed this issue and concluded that double jeopardy does not apply.

¶33. The *Schiro* Court held that double jeopardy applies to prevent three errors it protects against: (1) a second prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction and (3) multiple punishments for the same offense. *Schiro*, 510 U.S. at 229 (citing *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S. Ct. 2072, 2076, 23 L. Ed. 2d 656 (1969)). These protections stem from the premise that an accused should not be *tried or punished twice* for the same offense. *Id.* (citing *United States v. Wilson*, 420 U.S. 332, 339, 95 S. Ct. 1013, 1020, 43 L. Ed. 2d 232 (1975)). Double jeopardy operates as a bar against repeated attempts to convict, with consequent subjection of the defendant to embarrassment, expense, anxiety, and insecurity, and the possibility that he may be found guilty even though innocent. *United States v. DiFrancesco*, 449 U.S. 117, 136, 101 S. Ct. 426, 437, 66 L. Ed.2d 328 (1980).

¶34. In the present situation there is no threat of multiple prosecutions for the same offense or for repeated punishment arising from the same conviction. *See Schiro*, 510 U.S. at 230. The sentencing phase of a capital murder trial is one part of the whole trial which includes the guilt phase. The use of the underlying felony at sentencing does not expose the defendant to double jeopardy. Therefore, Brawner's arguments under Issue II are without merit.

## III. CONSTITUTIONALITY OF THE AVOIDING ARREST AGGRAVATING FACTOR

¶35. Brawner argues that the use of the avoiding arrest aggravating factor without a limiting instruction creates a vague, over broad and unconstitutional application of Mississippi's death penalty statute which results in an unconstitutional sentence. Since this issue could have been raised on direct appeal and was not it is procedurally barred. Notwithstanding the procedural bar, we address the merits.

¶36. This Court has addressed this exact argument numerous times and found it without merit. *Doss v. State*, 882 So. 2d 176, 195 (Miss. 2004); *Wiley v. State*, 750 So. 2d 1193 (Miss. 1999); *Puckett v. State*, 737 So. 2d 322, 362 (Miss. 1999); *Carr v. State*, 655 So. 2d 824, 854 (Miss. 1995); *Walker v. State*, 671 So. 2d 581, 611 (Miss. 1995); *Chase v. State*, 645 So. 2d 829, 858 (Miss. 1994). Briefly stated, our death penalty statute does not equate every murder with an attempt to eliminate witnesses, but rather narrowly defines to whom the avoiding arrest aggravating factor may be applied. *Wiley*, 750 So. 2d at 1207.

¶37. As the Fifth Circuit has noted, our decisions have narrowly construed the application of the avoiding arrest aggravating factor only to circumstances where the accused purposefully killed the victim of the underlying felony to avoid or prevent arrest for that felony. *Gray v. Lucas*, 677 F.2d 1086, 1109-10 (5th Cir. 1982). Unequivocally this Court has said:

> Each case must be decided on its own peculiar facts. If there is evidence from which it may be reasonably inferred that a substantial reason for the killing was to conceal the identity of the killer or killers or to 'cover their tracks' so as to avoid apprehension and eventual arrest by authorities, then it is proper for the court to allow the jury to consider this aggravating circumstance.

17

*Wiley*, 750 So. 2d at 1206 (citing *Chase*, 645 So. 2d at 858)). Therefore, this argument is without merit.

¶38. In turning to whether the present case is appropriate for the avoiding arrest aggravating factor, this Court employs a deferential standard of review. It is this Court's role to inquire into whether there was credible evidence to support the jury's finding of the aggravating factor. *Wiley*, 750 So. 2d at 1206. The following facts were admitted in support of the jury's finding. Brawner confessed that it was his intent to rob the Crafts and Barbara. For that purpose he purchased and wore rubber gloves and broke into the Crafts' home earlier that day to steal Carl's rifle. He entered the Crafts' home the second time for the sole purpose of robbing the inhabitants. It was not until after he had entered the home that he realized he would not be able to "get away with" the robbery without eliminating the witnesses. Barbara had gunshot wounds to her hands which indicated that she received them in a defensive posture. The only reason he shot his daughter, Paige was because she had witnessed him shoot Jane and Barbara and he feared that she would identify him to the police.

¶39. After he shot Jane, Barbara and Paige, he waited for Carl to come home before shooting him as he walked in the door. Brawner then stole Carl's wallet, Jane's wedding ring and food stamps from Barbara's purse. Afterwards, he wiped down the crime scene with Windex to eliminate evidence. After taking the money from Carl's wallet he disposed of the wallet so that it could not be found. Later, when confronted by the police he told them that he had bought the ring from a pawn shop.

18

¶40. These facts indicate Brawner's concerted effort to avoid arrest. This Court has held that use of gloves in the commission of an underlying felony is evidence of the accused's intent to avoid arrest. *See Chase*, 645 So. 2d at 857. Further, this Court has recognized that where the victim of the crime knew the defendant and would have subsequently been able to identify him, that the victim's murder provides credible evidence in support of the jury's finding. *See Puckett*, 737 So. 2d at 362. This Court has also recognized defensive wounds on the victim, indicating that they were not aggressive to the defendant provide evidence of the defendant's intent to avoid arrest. *See Doss*, 882 So. 2d at 193. These facts combined with the others and most notably Brawner's confession that he entered with the purpose of robbing the victims provide credible evidence to support the jury's finding. *Id*. This issue is without merit.

## IV. CONSTITUTIONALITY OF THE FELONIOUS ABUSE OF A CHILD AGGRAVATING FACTOR

¶41. This Court addressed on direct appeal whether it was appropriate for the jury to consider the felonious abuse of a child aggravating factor:

> Here, Brawner shot his daughter's grandmother as his daughter watched, then shot his daughter's mother as she watched. He again shot both the grandmother and the mother two additional times, all as Paige looked on. He then shot his daughter twice. Shooting Paige fits the description of felony child abuse in that it is a strike to the child in a manner as to cause serious bodily harm. Therefore, we reject Brawner's assertion that the killing of Paige Brawner was not capital murder.

*Brawner*, 872 So. 2d at 16. Now on post-conviction Brawner asserts that our death penalty statute, as applied to felonious child abuse, is unconstitutional. He claims that when reading Miss. Code Ann. Section 95-5-39(2)(c) (felonious child abuse) in conjunction with Miss.

19

Code Ann. Section 97-3-19(2)(f) (capital murder) the result is an automatic implication of a capital crime regardless of how or in what manner the child suffers death.

¶42. This issue could have been raised on direct appeal and it was not. Therefore, it is procedurally barred. However, without raising the procedural bar, since Brawner challenges the constitutionality of our capital murder regime, we address the merits. This Court found in *Stevens v. State*, 806 So. 2d 1031, 1044 (Miss. 2001) that the Legislature intended under Miss. Code Ann. Section 95-5-39(2)(c) that the intentional act of murdering a child, no matter the manner in which it was performed, constitutes felonious abuse of a child under Miss. Code Ann. Section 97-3-19(2)(f). It is the Legislature's prerogative to define crimes and set punishments as long as they remain within the limits of the United States Constitution and our own. *Id*. In that regard, we found that the Legislature intended that there need be only one act to constitute capital murder by felonious abuse of a child. *Id*. (citing *Brown v. State*, 690 So. 2d 276, 291 (Miss. 1996)).

¶43. Previously a defendant in *Faraga v. State*, 514 So. 2d 295 (Miss. 1987), assailed the constitutionality of our capital murder statute by raising an identical argument. In *Faraga* this Court found that upon reading the statutes in conjunction that they were constitutional. *Faraga*, 514 So. 2d at 302. As it was in *Faraga*, Brawner's argument is without merit.

## V.    AGGRAVATING FACTORS NOT LISTED IN INDICTMENT

¶44.    Brawner here repeats his argument from Issue II, with regard to the applicability of *Ring* and *Apprendi*, except now he includes all aggravating factors.  For the reasons stated in Issue II this Issue is also without merit.

## VI.    ILLEGAL SENTENCE

¶45.    Brawner argues that since this Court did not possess the entire transcript that any proportionality review which was done was incomplete.  In every death penalty direct appeal this Court is required to review the proportionality of the sentence to the crime for which the defendant was convicted.  *See* Miss. Code Ann. § 99-19-105(3)(a).[1]  On direct appeal this Court conducted the following proportionality review:

> Brawner asserts that Miss. Code Ann. § 99-19-105(3) (Rev.2000) requires the Court to perform a proportionality review if it affirms a death sentence in a capital case. He also requests the Court to reverse the death sentence for Count one based on his arguments in Issues VI and VII.
>
> Brawner cites no authority to support his contention that the death penalty is disproportionate in this case.  This Court must review the death sentence in accordance with Miss. Code Ann. § 99-19-105(3), which states: (3) With regard to the sentence, the court shall determine: (a) Whether the sentence of death was imposed under the influence of passion, prejudice or any other arbitrary factor; (b) Whether the evidence supports the jury's or the judge's finding of a statutory aggravating circumstance as enumerated in Section 99-19-101; (c) Whether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant; and (d) Should one or more of the aggravating circumstances be found invalid on appeal, the Mississippi Supreme Court shall determine whether the remaining aggravating circumstances are outweighed by the mitigating circumstances or

---

[1] (3) with regard to the sentence, the court shall determine:
    (a) whether the sentence of death was imposed under the influence of passion, prejudice or any other arbitrary factor.

21

whether the inclusion of any invalid circumstance was harmless error or both. Miss. Code Ann. § 99-19-105(3).

There is nothing in the record to suggest that the sentence of death was imposed under the influence of passion, prejudice or any other arbitrary factor. In addition, Brawner has not argued to the contrary. There is evidence supporting the finding of aggravating factors. The following aggravating factors were found by the jury, and we find there is sufficient evidence supporting them: the capital offense was committed by a person under sentence of imprisonment (four counts); the offense was committed while the defendant was engaged in the commission of robbery (three of the four counts); and the offense was committed for the purpose of avoiding or preventing lawful arrest (four counts).

The death penalty has been held not to be disproportionate in cases similar to this one. *See Stevens v. State*, 806 So. 2d 1031 (Miss. 2001) (defendant shot and killed his ex-wife, also shot and killed two children and the ex-wife's husband who were in the home at the time, and shot his teenage daughter, who was not killed); *McGilberry v. State*, 741 So.2d 894 (Miss. 1999) (16-year-old defendant robbed and killed four members of his own family); *Brown v. State*, 690 So. 2d 276 (Miss. 1996) (defendant chopped to death three members of a family); *Jackson v. State*, 684 So. 2d 1213 (Miss. 1996) (defendant stabbed and killed four children during attempted robbery of his mother's home).

There are other cases, where fewer persons, and no children, were killed, which have sustained this test: *Manning v. State*, 765 So. 2d 516 (Miss. 2000) (defendant murdered two elderly women by means of beating them unconscious with iron and slashing their throats with kitchen knife, while robbing them of approximately $12); *Brown v. State*, 682 So. 2d 340 (Miss. 1996) (defendant who shot store clerk four times during commission of armed robbery). *See also Doss v. State*, 709 So. 2d 369 (Miss. 1997) (death sentence was proportionate where defendant robbed and shot victim); *Cabello v. State*, 471 So. 2d 332, 350 (Miss. 1985) (death sentence was proportionate where defendant strangled and robbed victim); *Evans v. State*, 422 So. 2d 737, 739 (Miss. 1982) (death sentence was proportionate where defendant robbed and shot victim).

In view of these and other cases (see Appendix), we cannot say that the death penalty is disproportionate in the current case where Brawner killed his ex-wife, mother-in-law and father-in-law during the commission of a robbery, then shot and killed his own three-year-old daughter because she could identify him.

*Brawner*, 872 So. 2d at 16-17. Brawner fails to assert specific errors made supported by relevant citations. Brawner's entire argument is based on the premise that since this Court lacked a transcript of voir dire, opening statements and closing arguments that our proportionality review was inherently flawed.

¶46. This Court will not sit as a Court of general review. Appellants and petitioners alleging errors must present us with a complete record highlighting the alleged errors supported by citation to relevant case law. *Byrom v. State*, 863 So. 2d 836, 891 (Miss. 2003); *Randolph v. State*, 852 So. 2d 547, 558 (Miss. 2002) (in the absence of meaningful argument and citation of authority this Court will generally not consider the assignment of error); *Moody v. State*, 838 So. 2d 324, 338 (Miss. 2002). This is especially so in the present case where Brawner has been in possession of the omitted portions of the transcript for an extended period of time, including a grant of additional time by this Court for this specific purpose, and has failed to allege any specific errors therefrom. Therefore, we find this argument without merit.

## CONCLUSION

¶47. None of Brawner's arguments have merit. Therefore, we deny his petition for post-conviction relief.

¶48. **PETITION FOR POST-CONVICTION RELIEF DENIED.**

**SMITH, C.J., WALLER, P.J., DIAZ, EASLEY, CARLSON, GRAVES, DICKINSON AND RANDOLPH, JJ., CONCUR.**