# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2005-DR-00523-SCT

*THONG LE*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 08/23/2002 |
| TRIAL JUDGE: | HON. JAMES W. BACKSTROM |
| COURT FROM WHICH APPEALED: | JACKSON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | MISSISSIPPI OFFICE OF CAPITAL POST CONVICTION COUNSEL |
| | BY: ROBERT M. RYAN |
| | LOUWLYNN VANZETTA WILLIAMS |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: PAT MCNAMARA |
| | MARVIN L. WHITE, JR. |
| DISTRICT ATTORNEY: | KEITH MILLER |
| NATURE OF THE CASE: | CIVIL - DEATH PENALTY - POST CONVICTION RELIEF |
| DISPOSITION: | DENIED - 08/16/2007 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**DICKINSON, JUSTICE, FOR THE COURT:**

¶1.     Thong Le and Ngan Tran were indicted for capital murder in the beating and strangulation deaths of Minh Heiu Thi Huynh and her two daughters, Thuy, age eleven, and Than, age fifteen. Ngan Tran, who was believed to have committed the actual killings, took his own life while in custody. Le went to trial and was sentenced to death by lethal injection.

## FACTS AND PROCEDURAL HISTORY

¶2.   At Le's trial the State presented evidence which showed that the pair had gone to Huynh's home for the purpose of robbing her.  The two were admitted into the apartment by the children, who were home alone. When Huynh returned, she and the children were bound, savagely beaten and strangled to death.  Le and Tran spent hours attempting to sanitize the scene with water and bleach.  The two left with $1,300 cash and a book bag containing some household items.  Following their arrest, Tran hanged himself in his cell.  Le went to trial where he was convicted of capital murder committed during the course of a robbery.  He was sentenced to death by lethal injection.  On direct appeal, Le's conviction and sentence were affirmed by this Court.  *Le v. State*, 913 So. 2d 913 (Miss. 2005).  Le now files a motion for post-conviction relief arguing ten issues, which are each discussed below.

## ANALYSIS

### I.      Ineffective Assistance of Counsel.

¶3.   Ineffective assistance of counsel was raised as an issue on direct appeal (*Le*, 913 So. 2d at 950-55) and should be procedurally barred from consideration on collateral appeal. Miss. Code Ann. § 99-39-21(Rev. 2000).  Le now raises other instances of alleged ineffective assistance and argues that trial counsel rendered ineffective assistance in failing to pursue a change of venue, failing to strike a particular juror, and in failing to retain an expert in the field of false confessions.  Despite the procedural bar, this discussion follows:

> The benchmark for judging any claim of ineffectiveness [of counsel] must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.

2

***Strickland v. Washington***, 466 U.S. 668, 686 (1984) 104 S.Ct. 2052, 8 L. Ed. 674.

¶4.     One who claims ineffective assistance of counsel must demonstrate that counsel's performance was deficient and that the deficiency prejudiced the defense of the case. ***Id***. at 687. "Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable." ***Stringer v. State***, 454 So. 2d 468, 477 (Miss.1984) (citing ***Strickland***, 466 U.S. at 687).

¶5.     Defense counsel is presumed competent. ***Washington v. State***, 620 So. 2d 966 (Miss. 1993).  But even where professional error is shown, the reviewing court must determine whether there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." ***Mohr v. State***, 584 So. 2d 426, 430 (Miss. 1991).  In death penalty appeals, the most important inquiry is "whether there is a reasonable probability that, absent the errors, the sentencer--including an appellate court, to the extent it independently re-weighs the evidence--would have concluded that the balance of the aggravating and mitigating circumstances did not warrant death." ***Strickland v. Washington***, 466 U.S. at 695.

¶6.     Le first claims that trial counsel erred in failing to seek a change of venue because of extensive pre-trial publicity in local newspapers.  The fact that at least two jurors had simply "heard a little bit on the news"seems woefully inadequate when claiming that the jury venire was not impartial.  A review of the transcript of the voir dire process indicates that most of the venire was largely unaware of this particular case and those members who were unaware of it assured counsel and the trial court that they could be impartial.  This Court has held that

3

defense counsel is under no duty to attempt to transfer venue; therefore, the decision not to seek a change of venue falls within the realm of trial strategy. ***Bishop v. State***, 882 So. 2d 135, 142 (Miss. 2004). This assertion is without merit.

¶7. Le next claims that trial counsel's performance was deficient in failing to strike juror number eleven from the panel. When asked about prior knowledge of the case, this particular juror volunteered that shortly after being summoned for jury duty, the name "T. Le" had appeared on her telephone's caller ID and that she reported the matter to the District Attorney's office. The trial court and counsel examined this juror at the bench and discovered that she knew little else of the case other than that it had occurred. The juror assured the trial court that the incident would not influence her decision making if she were selected to serve on the jury. This assertion is without merit.

¶8. Finally, Le argues that his confession was "inaccurate, misleading, false in material particulars, and totally unreliable" such that trial counsel must be faulted for failing to retain an expert in the field of false confessions. Petitioner further characterizes this omission as a failure to investigate. Although couched as a claim of ineffective assistance of counsel, this Court thoroughly considered the matter on direct appeal as part of Le's challenge regarding his pretrial motion to suppress the confession. ***Le***, 913 So. 2d at 930-34.

¶9. There was testimony at the suppression hearing that Le had been given his ***Miranda*** warnings on two separate occasions and that Le was a nineteen-year-old born in this country whose native language was English. This Court considered the entire record (including the hearing on the pre-trial motion to suppress) and still found no error in the trial court's

4

decision to admit the statement. *Id.* at 934. Petitioner makes no convincing showing that he was incompetent to give the statement or that he was psychologically coerced to confess.

¶10. Instead, much of petitioner's argument on this issue goes to whether Le was the type of individual to have taken an active role in the commission of the killings. Petitioner submits the affidavit of a clinical psychologist who opines that Le is not by nature a violent person. Le's legal culpability as an accomplice is not reduced by this sort of argument. His willing participation in the successive killings of three defenseless people makes him every bit as responsible as the ring leader. It therefore cannot be said that the testimony of an expert would have changed the outcome at trial. This assertion is without merit.

## II. Weight of the Evidence as to Intent and a Disproportionate Sentence.

¶11. Le next argues that, given his minimal role in the crime, the jury's finding concerning his intent to kill was not supported by the evidence, and the death sentence was disproportionate. This issue was thoroughly considered on direct appeal and found to be without merit. *Le*, 913 So. 2d at 943-47. Specifically, this Court held that the jury had found more than just contemplation by Le that lethal force would be employed with regard to all three murders. *Id.* at 945. The Court found that "Le's argument that he was guilty of nothing more than contemplation of lethal force is without merit." *Id.* In doing so, this Court noted Le's admission that he knew Tran had a gun and that he assisted Tran in binding the victims and even choked Huynh and helped to sanitize the crime scene. *Id.* at 946. The Court further held that imposition of the death penalty under these circumstances was not disproportionate to those death sentences imposed in other cases. *Id.* at 947. The issue was found to be

5

wholly without merit and reconsideration on collateral appeal is procedurally barred by statute. Miss. Code Ann. § 99-39-21(2) and (3)(Rev. 2000).

### III. Failure to Suppress Confession as Fundamental Reversible Error.

¶12. This is the same argument put forth as an alleged instance of ineffective assistance of counsel. Le now argues that he was psychologically incompetent to give a reliable statement to law enforcement authorities and that this condition was not known at the time of trial. This issue is essentially a restatement of the ineffective assistance claim presented earlier under the guise of failure to retain a false confession expert. As mentioned previously, the admissibility of the statement was discussed thoroughly on direct appeal. *Le*, 913 So. 2d at 930-34. Reconsideration on collateral appeal is now procedurally barred pursuant to Miss. Code Ann.§ 99-39-21(2) and (3)(Rev. 2000).

### IV. Inadmissible Statement of Deceased Co-defendant.

¶13. This issue was considered in great detail on direct appeal and found to be without merit. *Le*, 913 So. 2d at 940-43. Le argued that Tran's custodial statement to police was inadmissible hearsay because Tran was no longer available for cross-examination. Le further argued that the statement fell within no exception to the hearsay rule. This Court found no constitutional violation because the statement was offered only in rebuttal and was not used against Le in the State's case-in-chief. *Id*. at 942.

¶14. Le called witnesses in his defense to testify concerning Tran's statements and thereby opened the proverbial door to rebuttal testimony. Tran's statement was not introduced for the primary purpose of proving Le's guilt and was therefore not constitutionally impermissible.

6

Having been considered on direct appeal, the issue is now procedurally barred from collateral review. Miss. Code Ann. § 99-39-21(3)(Rev. 2000).

### V. Use of Religious Beliefs to Coerce a Confession.

¶15. This issue was thoroughly considered by this Court on direct appeal and found to be without merit. *Le*, 913 So. 2d at 930-34. The issue centered on a discussion between Le and Sergeant Joseph Nicholson, who asked Le if he believed that three souls had been taken that night. Le, however, continued to maintain his innocence. *Id*. at 931. This Court noted that Le had already confessed to his participation in the robbery and that the killings had taken place during the course of the robbery. *Id*. at 933. Having been considered on direct appeal, the matter is now procedurally barred from collateral review pursuant to Mississippi Code Annotated Section 99-39-21(3)(Rev. 2000).

### VI. Use of Peremptory Challenges Against African-American Veniremen.

¶16. This issue also was thoroughly discussed on direct appeal and found to be without merit. *Le*, 913 So. 2d at 925-930. Specifically, the Court held, "we are unable to find the trial court erred in accepting the race-neutral reasons offered by the State for the strikes of the seven African-American jurors." *Id*. at 930. Having been considered on direct appeal, this issue is now procedurally barred from collateral review pursuant to Mississippi Code Annotated Section 99-39-21(3)(Rev. 2000).

### VII. Failure to Charge Aggravating Circumstances in the Indictment.

¶17. Le argues that his death sentence must be vacated because the aggravating circumstances which invoked the death penalty were not charged in the indictment. This

7

issue could have been raised on direct appeal and is now procedurally barred from consideration. Miss. Code Ann. § 99-39-21(Rev. 2000). Despite the procedural bar, the Court notes the following.

¶18. Counsel for Le cites (as is done in almost every capital PCR) the rulings of the United States Supreme Court in *Apprendi v. New Jersey,* 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000) and *Ring v. Arizona*, 536 U.S. 584, 122 S. Ct. 2428, 153 L. Ed. 2d 556 (2002) in which that Court held unconstitutional a sentencing scheme where a judge rather than a jury determined whether there were aggravating circumstances present to warrant imposition of enhanced punishment.

¶19. Apprendi was charged with firing shots into the home of an African-American family in New Jersey. He pled guilty to possession of a firearm for unlawful purposes and, after the judge accepted the guilty plea, the prosecutor moved for an enhanced sentence on the basis that it was a hate crime. Apprendi argued that he was entitled to have the finding on enhancement decided by a jury. The U.S. Supreme Court held, "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490.

¶20. In 2002, the U.S. Supreme Court decided *Ring v. Arizona*. 536 U.S. 584 *Ring* addressed the issue of whether the Arizona capital sentencing process as upheld in *Walton v. Arizona*, 497 U.S. 639 (1990) with a jury deciding guilt and a judge making findings on aggravating factors, could survive the *Apprendi* decision. The Supreme Court decided it could not. *Id*.

> [W]e overrule *Walton* to the extent that it allows a sentencing judge, sitting without a jury, to find an aggravating circumstance necessary for imposition of the death penalty. *See* 497 U.S., at 647-649, 110 S.Ct. 3047. Because Arizona's enumerated aggravating factors operate as "the functional equivalent of an element of a greater offense," *Apprendi*, 530 U.S., at 494, n. 19, 120 S.Ct. 2348, the Sixth Amendment requires that they be found by a jury.

*Ring*, 536 U.S. at 609. The Court specifically noted, "Ring's claim is tightly delineated: He contends only that the Sixth Amendment required jury findings on the aggravating circumstances asserted against him." *Id*. at 597, n.4. Ring did not contend that his indictment was constitutionally defective as does Le.

¶21. As a practical matter, Rule 7.06 of the Uniform Circuit and County Court Rules provides that an indictment shall be "a plain, concise and definite written statement of the essential facts constituting the offense charged and shall fully notify the defendant of the nature and cause of the accusation." A defendant is not entitled to formal notice of the aggravating circumstances to be employed by the prosecution. An indictment for capital murder puts a defendant on sufficient notice that the statutory aggravating factors will be used against him. *Smith v. State*, 729 So. 2d 1191, 1224 (Miss. 1998) (relying on *Williams v. State*, 445 So. 2d 798 (Miss. 1984)).

> We believe that the fact that our capital murder statute lists and defines to some degree the possible aggravating circumstances surely refutes the appellant's contention that he had inadequate notice. Anytime an individual is charged with murder, he is put on notice that the death penalty may result. And, our death penalty statute clearly states the only aggravating circumstances which may be relied upon by the prosecution in seeking the ultimate punishment.

*Williams*, 445 So. 2d at 804-05. This Court has consistently found this issue (failure to charge the aggravating factors in the indictment) to be without merit. *Havard v. State*, 928

9

So. 2d 771(Miss. 2006); *Berry v. State*, 882 So. 2d 157, 172 (Miss. 2004). As raised by Le, the issue continues to be without merit.

## VIII.  Lethal Injection Violates the Eighth Amendment.

¶22.    This issue was capable of being raised on direct appeal and is procedurally barred from further consideration on collateral appeal. Miss. Code Ann. § 99-39-21(1)(Rev. 2000). In *Jordan v. State*, the petitioner failed to raise lethal injection as an Eighth Amendment claim and this Court employed the procedural bar.

> Jordan failed to make any claim relating to the method of execution at trial or on direct appeal. Therefore, this claim is barred for consideration for the first time on application for leave to seek post-conviction relief. *See* Miss. Code Ann. § 99-39-21(1); *Bishop v. State*, 882 So. 2d 135, 149 (Miss. 2004); *Grayson v. State*, 879 So. 2d 1008, 1020 (Miss. 2004).

918 So. 2d 636, 661. Despite the procedural bar, this Court looked to merits of the claim and found none based on Jordan's failure to submit any sworn proof as required by Mississippi Code Annotated Section 99-39-9(1)(e)(Rev. 2000). *Id*. at 662. Likewise, counsel for Le fails to submit any affidavit which legitimately questions the lethal injection protocol employed by the Mississippi Department of Corrections. This issue is without merit.

## IX.    Cumulative Error.

¶23.    Le argues generally that the alleged preceding errors, taken as a whole, deprived him of a fair trial. The standard of review for an appeal from a capital murder conviction and death sentence is that it must be subjected to "heightened scrutiny." *Balfour v. State*, 598 So. 2d 731, 739 (Miss. 1992) (citing *Smith v. State*, 499 So. 2d 750, 756 (Miss. 1986); *West v. State*, 485 So. 2d 681, 685 (Miss. 1985)). All doubts are to be resolved in favor of the accused because "what may be harmless error in a case with less at stake becomes reversible

10

error when the penalty is death." *Id.* (quoting *Irving v. State*, 361 So. 2d 1360, 1363 (Miss. 1978)). *See also Fisher v. State*, 481 So. 2d 203, 211 (Miss. 1985).

¶24.    With regard to the issue of alleged cumulative error, the Court previously has taken note of those capital cases in which the opinions of this Court articulated differing analyses. For example, in *McFee v. State*, 511 So. 2d 130, 136 (Miss. 1987) (rape conviction and life sentence affirmed), this Court individually addressed each assignment of error and found none (harmless or otherwise) by the trial court. Based on that finding, the Court stated:

> In sum, *McFee* contends that the cumulative effect of the alleged errors was sufficient to prejudice the jury, essentially allowing the State to convict him not of rape, but of murder. Yet, as discussed, neither the introduction of the photographs nor the prosecutor's comments constituted reversible error. As there was no reversible error in any part, so there is no reversible error to the whole.

*Id.* However, in *Jenkins v. State*, 607 So. 2d 1171, 1183-84 (Miss. 1992) (capital murder conviction and death sentence reversed and remanded), in which this Court found both harmless error and reversible error by the trial court, the Court stated:

> If reversal were not mandated by the State's discovery violations, we would reverse this matter based upon the accumulated errors of the prosecution. This Court has often ruled that errors in the lower court that do not require reversal standing alone may nonetheless taken cumulatively require reversal.

*Id.* (citing *Griffin v. State*, 557 So. 2d 542, 552-53 (Miss. 1990)). In *Manning v. State,* 726 So. 2d 1152, 1198 (Miss. 1998), *overruled on other grounds by Weatherspoon v. State*; 732 So. 2d 158 (Miss. 1999) (capital murder convictions and death sentence affirmed), after addressing twenty-one assignments of error with sub-parts, and after making numerous findings of no "reversible error," the Court stated:

11

This Court has held that individual errors, not reversible in themselves, may combine with other errors to make up reversible error. *Hansen v. State*, 592 So. 2d 114, 142 (Miss. 1991); *Griffin v. State*, 557 So. 2d 542, 553 (Miss. 1990). The question under these and other cases is whether the cumulative effect of all errors committed during the trial deprived the defendant of a fundamentally fair and impartial trial. Where there is "no reversible error in any part, . . . there is no reversible error to the whole." *McFee v. State*, 511 So. 2d 130, 136 (Miss. 1987).

*Manning*, 726 So. 2d at 1198.

¶25. To reconcile these different views, the *Byrom* court held:

What we wish to clarify here today is that upon appellate review of cases in which we find harmless error or any error which is not specifically found to be reversible in and of itself, we shall have the discretion to determine, on a case-by-case basis, as to whether such error or errors, although not reversible when standing alone, may when considered cumulatively require reversal because of the resulting cumulative prejudicial effect. That having been said, for the reasons herein stated, we find that errors as may appear in the record before us in today's case, are individually harmless beyond a reasonable doubt, and when taken cumulatively, the effect of all errors committed during the trial did not deprive Michelle Byrom of a fundamentally fair and impartial trial. We thus affirm Byrom's conviction and sentence.

*Byrom*, 863 So. 2d at 846-47. In the present case, the record supports no finding of error, harmless or otherwise, upon the part of the trial court or on the part of trial counsel. Consequently, there can be no prejudicial cumulative effect and no adverse impact upon Le's constitutional right to fair trial.

###### X. Double Prejudice Through Consideration of the Armed Robbery Charge as well as Reference to Pecuniary Gain.

¶26. The same issue was presented to this Court in *Brawner v. State* and found to be without merit. *Brawner*, 947 So. 2d 254 (Miss. 2006). The Court there held:

We have consistently upheld the use of the underlying felony as an aggravating factor during sentencing. *Goodin v. State*, 787 So. 2d 639, 654

12

(Miss. 2001) (citing ***Walker v. State***, 671 So. 2d 581, 612 (Miss. 1995)). The argument is the familiar "stacking" argument. It contends that it is unconstitutional for the State to elevate murder to capital murder and then, using the same factor, elevate the sentence to death. As pointed out in ***Lockett v. State***, 517 So. 2d 1317, 1337 (Miss. 1987), this Court has consistently rejected this argument. ***Goodin***, 787 So. 2d at 654; ***Davis v. State***, 684 So. 2d 643, 664 (Miss. 1996). However, this Court has found impermissible doubling where the trial court in a sentencing proceeding submits as separate aggravating factors both the fact that the capital murder was committed during the commission of a robbery and for pecuniary gain. ***Goodin***, 787 So. 2d at 654. In that case the two aggravating factors essentially comprise one circumstance. *Id*. (citing ***Willie v. State***, 585 So. 2d 660 (Miss. 1991)).

The Florida cases cited by Brawner do not stand for the proposition he asserts. Rather, they stand for the proposition that *the use of two aggravating factors which essentially comprise one circumstance results in impermissible doubling*. ***Barnhill***, 834 So. 2d at 851; ***Griffin***, 820 So. 2d at 914-15; ***Robertson***, 611 So. 2d at 1233. This is identical to our law as announced in ***Goodin*** and ***Willie***. Therefore, this assertion is without merit.

***Brawner***, 947 So. 2d at 265. The same argument is put forth by Le and must fail for the same reasons. The issue is without merit.

¶27. **LEAVE TO SEEK POST-CONVICTION RELIEF, DENIED.**

**WALLER, P.J., EASLEY, CARLSON, GRAVES, RANDOLPH AND LAMAR, JJ., CONCUR. SMITH, C.J., AND DIAZ, P.J., NOT PARTICIPATING.**