ISHEE, J., for the Court:
¶ 1. Tadarryi Rew was convicted of burglary of a dwelling, two counts of kidnap-ing, and being a felon in possession of a firearm. The Circuit Court of Lauderdale County sentenced him as a habitual offender to the custody of the Mississippi Department of Corrections (MDOC). After the denial of Rew’s post-trial motions, he timely appeals and asserts the following assignments of error:
I. The circuit court committed plain error in granting jury instruction S-l, as amended, which constructively amended the indictment and rendered it fatally defective, and
*647 II. Defense counsel was ineffective in requesting the amendment to jury instruction S-l that constructively amended the indictment and lessened the State’s burden of proof and broadened the grounds on which the jury could convict Rew.
Finding no error, we affirm.
FACTS
¶ 2. In the early morning hours of May 21, 2008, Jermaine Lewis (Jermaine), Darryl Franklin, and Vanecia Middlebrook were spending the night at Latasha Lewis’s (Latasha) apartment at Village Apartments while Latasha stayed at her mother’s home. Jermaine, who is Latasha’s cousin, and Middlebrook were asleep in Latasha’s bedroom when they were awaken by the sound of glass breaking. Jermaine got up and checked the hallway. Finding nothing, he returned to the bedroom.
¶ 3. When Jermaine returned to the bedroom, he saw Rew coming through the bedroom window. According to Jermaine, when Rew saw him in the room, he asked: “What are you doing in my - f-house?” According to Jermaine’s testimony, Rew then pointed a gun at him and told him to “get back.” Rew then told Middlebrook to get out of the bed and he ordered both Middlebrook and Jermaine into the bedroom closet. Rew tried to call Latasha from his cellular phone, but she did not answer. He then grabbed Jermaine’s cellular phone and told Jermaine to call Latasha.
¶ 4. According to both Latasha and Jermaine, once Rew was able to reach Latasha on the phone, Rew told Latasha: “You must not love your cousin. I got a gun to his head[,] and I’ll kill him.” Latasha testified that she then heard the sound of one gunshot through the phone. She then woke up her sister, and they called the police. Latasha remained on the phone with Rew until the police arrived at her apartment.
¶ 5. Officer Sabanneo Terrell, a Meridian Police Department officer, was called to the Village Apartments in response to a disturbance involving a gun. Officer Terrell testified that when he arrived at Latasha’s apartment, he noticed a broken window to the left of the apartment door. Once backup for Officer Terrell arrived, he knocked on the door, but he did not get a response. He then walked to the back of the apartment where he noticed a bent-up window screen lying next to an open bedroom window that had one broken glass pane. Officer Terrell peered through the window and saw a man walking from the front of the apartment. That man was later identified as Rew. Officer Terrell then walked back around to the front of the apartment to meet the other police officers. The front door opened, and Jermaine walked out with his hands up, and repeatedly told the officers, “I’m not the one you’re looking for.”
¶ 6. Officer Terrell and Officer John Griffith, another Meridian Police Department officer, entered the apartment. Rew then walked out of the bathroom. He was arrested and taken to the police station.
¶ 7. A grand jury indicted Rew, and he was tried by a jury on the charges of burglary of a dwelling, two counts of kid-naping, and being a felon in possession of a firearm, all in connection with the May 21, 2008, incident. The jury found Rew guilty on all charges. The circuit court sentenced Rew as a habitual offender to the custody of the MDOC as follows: (1) ten years for Count I, burglary of a dwelling; (2) ten years for Count II, kidnaping; (3) ten years for Count III, kidnaping; and (4) one year for Count IV, felon in possession of a firearm with the sentence for Count III to run concurrently with the sentence *648 for Count II and consecutively with the sentences for all other counts.
DISCUSSION
I. Jury Instruction S-l
¶ 8. Rew asserts that the circuit court erred in granting jury instruction S-1. According to Rew, jury instruction S-l constructively amended his indictment and rendered the indictment fatally defective. Rew’s indictment charged him with the intent to commit the crime of kidnaping. However, the jury was instructed that Rew could be convicted of burglary if he intended to break and enter into Latasha’s dwelling with the intent to commit a crime therein. Jury instruction S-l, as amended, reads:
The Court instructs the [j]ury that, should you find from the evidence in this ease, beyond a reasonable doubt that:
1. On or about the 21st day of May, 2008, in Lauderdale County, Mississippi;
2. The Defendant, Tadarryl Rew, did willfully, unlawfully and feloniously break and enter the dwelling house of Latasha Lewis, with the intent to commit a crime therein,[1] then it is your sworn duty to find Tadarryl Rew guilty of Burglary of a Dwelling under Count I.
Should the State fail to prove any or more of these essential elements beyond a reasonable doubt, then you shall find Tadarryl Rew not guilty under Count I.
¶ 9. It is undisputed that the circuit court amended jury instruction S-l per the request of Rew. According to the record, the circuit court specifically asked Rew if he was waiving any inconsistency that jury instruction S-l would present as it related to the language of the indictment. Rew waived any objection.
¶ 10. “The decision to redact a portion of the jury instruction or tender it in its entirety falls within the realm of trial strategy. However, assuming error only for the sake of argument, [the defendant] does not make a showing that he was actually prejudiced.” Wilcher v. State, 863 So.2d 719, 751 (¶ 115) (Miss.2003). This Court looks at the jury instructions as a whole. Id. (citing Caston v. State, 823 So.2d 473, 506 (¶ 114) (Miss.2002)). “Jury instructions will always be considered as a whole as opposed to the singling out of any instructions.” Goodin v. State, 787 So.2d 639, 655 (¶ 54) (Miss.2001). We find that jury instruction S-l adequately instructed the jury; thus, this issue is without merit.
II. Ineffective Assistance of Counsel
¶ 11. Rew argues that his trial counsel was ineffective in requesting the amendment to jury instruction S-l. Rew claims that this change constructively amended his indictment and lessened the State’s burden of proof and broadened the grounds on which the jury could convict him.
¶ 12. Claims of ineffective assistance of counsel are reviewed by using the two-pronged test outlined in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In order to prevail on a claim of ineffective assistance of counsel, Rew has the burden of proof to show by a preponderance of the evidence that (1) counsel’s performance was deficient, and (2) that the deficiency did, in fact, prejudice him. Moreno v. State, 967 So.2d 701, 703 (¶ 4) (Miss.Ct.App.2007). In determining whether the first prong of *649 Strickland concerning counsel’s performance has been satisfied, we must “indulge a strong presumption that counsel’s conduct falls within the wide range of reasonable professional assistance.... ” Strickland, 466 U.S. at 689,104 S.Ct. 2052. The second prong of the Strickland test requires that Rew prove pi*ejudice by showing that there was a reasonable probability that, but for counsel’s errors, the trial court’s result would have been different. Id. at 694, 104 S.Ct. 2052. Whether the prongs of this test are met is determined by an examination of the totality of the circumstances. Id,, at 695, 104 S.Ct. 2052.
¶ 13. Our review of the trial transcript reveals that Rew was specifically asked, on the record, if he was waiving any inconsistency that jury instruction S-l would present as it related to the language of the indictment. Rew then waived any objection. Rew requested the change to the jury instruction; thus, we find that this argument has no merit. Rew’s assertion that he received ineffective assistance of counsel fails.
¶ 14. THE JUDGMENT OF THE LAUDERDALE COUNTY CIRCUIT COURT OF CONVICTION OF COUNT I, BURGLARY OF A DWELLING, AND SENTENCE OF TEN YEARS; COUNT II, KIDNAPING, AND SENTENCE OF TEN YEARS; COUNT III, KIDNAP-ING, AND SENTENCE OF TEN YEARS; AND COUNT IV, FELON IN POSSESSION OF A FIREARM, AND SENTENCE OF ONE YEAR, ALL AS A HABITUAL OFFENDER IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH THE SENTENCE FOR COUNT III, KIDNAPING, TO RUN CONCURRENTLY WITH THE SENTENCE FOR COUNT II, KIDNAPING, AND CONSECUTIVELY TO ALL OTHER SENTENCES, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO LAUDERDALE COUNTY.
KING, C.J., LEE and MYERS, P.JJ. IRVING, GRIFFIS, BARNES, CARLTON AND MAXWELL, JJ„ CONCUR. ROBERTS, J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY GRIFFIS AND MAXWELL, JJ.

. Before jury instruction S-l was amended, this part read "with the intent to kidnap therein.”