CHANDLER, Justice,
concurring in part and dissenting in part:
¶ 56. The majority errs by reweighing the evidence before the trial court and reversing the trial court’s holding that Goodin failed to establish by a preponderance of the evidence that he suffers from mental retardation. Because Goodin submitted insufficient evidence of significant limitations in adaptive functioning in at least two adaptive skill areas, he failed to meet the standard announced in Atkins v. Virginia, 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002). While I believe the trial court’s ruling on this issue was not clearly erroneous, I concur with the majority’s decision to affirm the ineffective assistance of counsel issue.
*1121 ¶ 57. Atkins provided two, almost identical, definitions of “mental retardation.” Id. at 308 n. 3., 122 S.Ct. 2242 The first definition, from the American Association on Mental Retardation states:
Mental retardation refers to substantial limitations in present functioning. It is characterized by significantly subaver-age intellectual functioning, existing concurrently with related limitations in two or more of the following applicable adaptive skill areas: communication, self-care, community use, self-direction, health and safety, functional academics, leisure, and work, Mental retardation manifests before age 18.
Id. The second definition, from The American Psychiatric Association, states:
“The essential feature of Mental Retardation is significantly subaverage general intellectual functioning (Criterion A) that is accompanied by significant limitations in adaptive functioning in at least two of the following skill areas: communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health, and safety (Criterion B). The onset must occur before age 18 years (Criterion C). Mental Retardation has many different etiologies and may be seen as a final common pathway of various pathological processes that affect the functioning of the central nervous system.” Diagnostic and Statistical Manual of Mental Disorders 39 (4th ed.2000).
Id. “Mild” mental retardation typically is used to describe people with an IQ level of 50-55 to approximately 70. Id. (citing Diagnostic and Statistical Manual of Mental Disorders 42-43 (4th ed.2000).
¶ 58. In Chase, this Court established the procedure used to determine a claim of mental retardation. Chase, 873 So.2d at 1028. We held that the defendant must submit the opinion of a qualified expert that the defendant meets the definition of mental retardation and is not malingering. Id. at 1029. We recognized Atkins’s holding that IQ score alone is not determinative of mental retardation. Id. at 1028 n. 18. “Mental retardation would not be diagnosed in an individual with an IQ lower than 70 if there are no significant deficits or impairments in adaptive functioning.” Id. Accordingly, a petitioner cannot meet the burden of proof of mental retardation without competent evidence establishing significant limitations in adaptive functioning in two or more adaptive skill areas.
¶ 59. While Goodin presented a cadre of impressively credentialed experts to the trial court, none of these experts provided any valid measurement of Goodin’s adaptive behavior. Dr. Dennis Keyes was the only expert out of these numerous witnesses to claim he attempted to measure Goodin’s adaptive behavior. In this failed attempt, Dr. Keyes employed the Adaptive Behavior Assessment System (ABAS II) and the Independent Living Scale (ILS, 1996).
¶ 60. Neither of the tests administered by Dr. Keyes provided competent evidence that Goodin’s level of adaptive functioning prior to his eighteenth birthday was so deficient that he was mentally retarded. Dr. Keyes admitted that neither test is scaled or normed for incarcerated individuals. Nonetheless, Dr. Keyes attempted to assess Goodin’s present-day functioning by administering the ILS, which required Goodin to perform tasks such as looking up a phone number and filling out a money order. Because Dr. Keyes admitted that an accurate measurement of adaptive functioning could not be obtained by testing an incarcerated prisoner, the learned trial judge correctly held that the test result did not constitute competent evidence of adaptive functioning deficits.
*1122 ¶ 61. Dr. Keyes administered the ABAS retrospectively in an attempt to get a measure of Goodin’s adaptive behavior prior to his incarceration. He did this by asking Goodin’s two sisters and brother to answer the questions with what they remembered about Goodin from his childhood. However, the ABAS did not provide a valid measurement of Goodin’s adaptive behavior prior to his eighteenth birthday because the normative data for the ABAS would have been collected well after February 26, 1972, when Goodin turned eighteen years of age. Dr. Keyes offered nothing to show that extrapolating the test data over a period of almost forty years was scientifically sound. Obviously, measures of adaptive functioning in the 1960s and 1970s were markedly different from today’s population. To compare, as Dr. Keyes did, Goodin’s level of functioning when he was eighteen years of age to today’s teenage population offers little insight into Goodin’s level of functioning and falls woefully short of proving that he is mentally retarded under Atkins. To further compound this defect, Dr. Keyes did not report an ABAS score for Goodin’s brother, who did not complete the form. Finally, Dr. Keyes assessed Goodin’s adaptive functioning retrospectively to when he was eighteen to nineteen years old, while Atkins requires that mental retardation have manifested prior to age eighteen. Atkins, 536 U.S. at 308 n. 3,122 S.Ct. 2242. While this Court has approved the use of a retrospective evaluation of an incarcerated prisoner, such retrospective evaluations must be performed in a manner that is scientifically reliable.[7] See M.R.E. 702(3).
¶ 62. Not only was there no competent evidence of significant limitations in adaptive functioning in at least two adaptive skill areas, there was copious evidence supporting the trial court’s decision that Goodin suffered from no such limitations. Dr. Reb McMichael testified that he had interviewed many mentally retarded individuals and had “never seen anyone who was genuinely mentally retarded who had the kind of conceptual formation and language usage that Mr. Goodin demonstrated.” Dr. McMichael testified that Goodin correctly used words like “experiencing,” “video technician,” “state witness,” “mitigating evidence,” “resources,” “railroaded,” and “socializing.” Further, it is well-documented that Goodin suffered from psychosis and paranoid schizophrenia, and there was expert testimony that his mental illness would have adversely affected his behavior as well as his performance on the intelligence tests.
¶ 63. Additionally, Goodin’s crime, in which he calculated and executed a robbery of a store and restaurant, provides facts that belie his claim of mental retardation. See Goodin v. State, 787 So.2d 639, 642-43 (Miss.2001). Goodin pretended to browse the store’s video rental section before pulling a gun on the store owner and stealing cash. Goodin disconnected a video surveillance camera and the attached television set and VCR and left the store with those items while holding the owner at gunpoint. Goodin drove away in the owner’s truck, shot the owner, and made him exit the truck. Goodin had the wherewithal to remove the truck’s license plate. Later, Goodin had trouble with the truck and a tow truck arrived to assist; when the tow-truck driver became suspicious, Goodin asked for a ride to his cousin’s *1123 house. When he got out of the tow truck, Goodin gave the driver fifty dollars and said, “You don’t know me, and I don’t know you.” Goodin hid the gun inside a crotchet basket in his cousin’s house. At Goodin’s arrest, it was discovered that he had hidden hundreds of dollars in cash.
¶ 64. The trial court found from all of the evidence that “[djespite scoring poorly on tests measuring intellectual functioning, Goodin’s cognitive abilities are beyond that of a person who is genuinely mentally retarded.” The trial judge, sitting as the trier of fact, is charged with the responsibility of assessing the totality of the evidence and the credibility of the witnesses. Doss v. State, 19 So.3d 690, 714 (Miss.2009). As the trier of fact, his findings are entitled to great deference. Loden v. State, 971 So.2d 548, 572-73 (Miss.2007). Given the absence of competent evidence that Goodin had significant deficits in adaptive functioning in at least two adaptive skill areas, I would find that the trial court’s decision that Goodin failed to meet his burden of proof of mental retardation by the preponderance of the evidence was not clearly erroneous. I would affirm.
RANDOLPH AND PIERCE, JJ„ JOIN THIS OPINION.

. Other courts have soundly rejected Dr. Keyes’s determination that a defendant is mentally retarded. Butler v. Quarterman, 576 F.Supp.2d 805, 822-24 (S.D.Tex.2008) (stating that "the adversarial slant to [Dr. Keyes’s] testimony gave the state trial judge ample reasons to reject many of his conclusions”); Goodwin v. State, 191 S.W.3d 20, 32-33 (Mo.2006).